IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY MARGARET BROWN,           :
                               :
        Plaintiff,             :
                               :
v.                             :
                               :     CIVIL ACTION FILE
CREDIT PROTECTION              :
ASSOCIATION, L.P,              :     NO. _____
A Texas Limited Partnership,   :
                               :
EQUIFAX INFORMATION            :
SERVICES, LLC,                 :
                               :
EXPERIAN INFORMATION           :
SOLUTIONS, INC.,               :
                               :     JURY TRIAL DEMANDED
TRANS UNION, LLC, and          :
                               :
COMCAST CABLE COMMUN-          :
ICATIONS MANAGEMENT, INC.,     :
sometimes d/b/a "Comcast-Atlanta," :
                               :
        Defendants.            :
_____ :


## FIRST AMENDED COMPLAINT FOR DAMAGES

### I.    Preliminary Statement

1.     This is an action for damages brought by an individual consumer against the

Defendants for violations of the Fair Credit Reporting Act (hereafter the

"FCRA"), 15 U.S.C. §1681 *et seq.*, *as amended,* the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereafter the "FDCPA") and various other supplemental state law claims.

## II.  Jurisdiction and Venue

2.  Jurisdiction of this Court arises under 15 U.S.C. §§ 1681p & 1692k(d),  28 U.S.C. §§ 1331 & 1337, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

3.  Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## III.  Parties

4.  Plaintiff MARY MARGARET  BROWN is an individual, who resides in Atlanta,  Georgia and is authorized to bring this action. [Hereinafter, said Plaintiff is  referred to as "MEG."]

5.  Defendant CREDIT PROTECTION ASSOCIATION, LLP is a limited liability partnership organized under the laws of the State of Texas. [Hereinafter, said Defendant is referred to as "CPA."]

6.  CPA transacts business in this state.

7.  CPA's transactions in this state give rise to the Plaintiff's cause of action.

8.     CPA is subject to the jurisdiction and venue of this Court.

9.     CPA may be served by personal service upon its registered agent in the State of Texas, to wit: C T Corporation System, 350 N. St. Paul, Ste. 2900, Dallas, TX 75201-4234, USA.

10.    Alternatively, CPA may be served on an authorized agent at its principal place of business, to wit: 13355 Noel Road, Suite 2100, Dallas, TX 75240.

11.    Defendant Equifax Information Services LLC (hereafter "EQUIFAX") is a Georgia limited liability company that regularly conducts business in the State of Georgia, and which has a principal place of business located 1550 Peachtree Street, N.W., Atlanta, GA 30309.

12.    EQUIFAX  may be served by personal service upon its registered agent in the State of Georgia, to wit: Kent Mast, 1550 Peachtree Street, N.W., Atlanta, GA 30309.

13.    Defendant Experian Information Solutions, Inc. (hereafter "EXPERIAN") is an Ohio Corporation that regularly conducts business in the State of Georgia and which has a principal place of business located at 475 Costa Mesa, CA 92626-7037.

14. EXPERIAN may be served by personal service upon its registered agent in the State of Georgia, to wit: C T Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361.

15. Defendant Trans Union, LLC (hereafter "TRANS UNION") is a Delaware limited liability company that regularly conducts business in the State of Georgia, and which has a principal place of business located at 555 W. Adams Street, Chicago, Illinois 60661-3719.

16.  TRANS UNION may be served by personal service upon its registered agent in the State of Georgia, to wit: The Prentice-Hall Corporation System, Inc., 40 Technology Parkway South, #300, Norcross, GA 30092.

17. Defendant COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC (hereafter "COMCAST") is a Delaware limited liability company that regularly conducts business in the State of Georgia, and which has a principal place of business located at 1701 John F. Kennedy Boulevard, Philadelphia, PA 19103-2838.

18. COMCAST may be served by personal service upon its registered agent in the State of Georgia, to wit: Corporation Process Company, 2180 Satellite Boulevard, Duluth, GA 30097.

19.   Alternatively, all defendants may be served by personal or substitute service

pursuant to the Federal Rules of Civil Procedure and, as applicable, the laws

of the several States.

## FACTS COMMON TO ALL CAUSES

20.   CPA  uses the mails in its business.

21.   CPA  uses telephone communications in its business.

22.   The principle purpose of CPA's business is the collection of debts.

23.   CPA regularly collects or attempts to collect debts owed or due, or asserted

to be owed or due, another.

24.   CPA is a debt collector subject to the provisions of the Fair Debt Collection

Practices Act.

25.   In the course of attempting to collect a consumer debt, CPA communicated

with Plaintiff in a manner which violated the Federal Fair Debt Collection

Practices Act.

26.   The alleged debt which CPA attempted to collect from the Plaintiff was a

bill for residential cable service provided by COMCAST.

27.   Said alleged debt was incurred for personal, family or household purposes.

28.   The alleged debt arose from a COMCAST account that belonged to a man that lived in the same apartment complex as Plaintiff.

29.   The man apparently shared the same last name as Plaintiff, to wit "Brown", however, the man was unrelated and unknown to Plaintiff.

30.   On December 10, 2010, the Plaintiff received a letter from CPA that was dated December 8, 2011.

31.   The collection letter alleged that Plaintiff was in default on a COMCAST account.

32.   Plaintiff did have Comcast Service but it was current and not in default and had a different account number.

33.   Plaintiff has perfect credit and was very concerned  by receiving this collection letter and promptly called to sort the erroneous matter out.

34.   On December 10, 2010, Plaintiff called COMCAST to inform Comcast of the mistake and advise them that she had received a collection letter from COMCAST's collection agent CPA.

35.   She specifically requested that they correct the error but did not have confidence that the customer service representative fully grasped the mistake they had made.

36.     On December 14, 2010, Plaintiff called COMCAST twice in an attempt to correct this erroneous information.

37.     On December 14, 2010, Plaintiff also called CPA twice in an attempt to correct this erroneous information.

38.     On December 22, 2010, Plaintiff had three separate calls to COMCAST to attempt to correct their error.

39.     On January 3, 2011, the Plaintiff received a letter from CPA dated December 27, 2010 which stated that her time to request verification was to expire within 3 weeks and that "**[i]f this account is not settled, your name and account number will be reported to credit bureaus throughout the country.**"  (Bold emphasis added.)

40.     Plaintiff was very upset about this threat to her credit which had occurred after she had been diligent in bringing the error to both CPA and COMCAST's attention.

41.     CPA was put on notice from its multiple conversations with Plaintiff that the debt was reported to them in error by COMCAST.

42.     CPA and COMCAST continued to fail to correct this error.

43.     CPA and COMCAST failed to properly attribute this debt to the correct party despite recognizing that there was an obvious error.

44.    On January 3, 2011, the Plaintiff called COMCAST and spoke with a

customer service representative identified as Brittany (operator #34) who

was finally able to deduce the root of the problem and specifically advised

Plaintiff that COMCAST had mistakenly attached her name to an account

that was clearly not hers and that all of her identifying information, which

included her name, address and social security number, would be removed

from the account at issue.

45.    Although Plaintiff was pleased that COMCAST had finally found their

error, she was still concerned about her credit and the threatening letter she

received from CPA, so she requested that the COMCAST employee

conference by telephone with her to CPA to put this matter to rest for good.

46.    Plaintiff and the COMCAST employee identified as "Brittany," followed up

their initial conversation with a conference call to an  employee collection

agent of CPA identified as "Pat" (at extension number 1998) to confirm that

the account had been erroneously placed and that the actual debtor lived at a

different address at the same apartment complex but was a totally different

account.

47.    From the conversation, Plaintiff felt that the matter was resolved, but as a

further precaution, on January 3, 2011, Plaintiff followed up the conference

call she had with both the CPA and COMCAST employees with a letter to CPA which memorialized the substance of the conference call in which COMCAST had admitted to have made a mistake and that CPA would stop collecting on the account and cease sending letters and would not report the account to her credit file as delinquent.

48.   As a result of the multiple December 2010 calls to both CRA and CPA as well as the conference call on January 3, 2011, both CPA and COMCAST had actual and notice that the account that was the subject matter of CPA's collection was in fact not the Plaintiff's account but was in fact that account of a third party.

49.   Both CPA and COMCAST not only had notice but had affirmatively agreed to take action to fix the problem that they had caused Plaintiff.

50.   On or about February 8, 2011, CPA sent a collection letter with a statement of account which attempted to collect on the same account.

51.   The February 8 letter again threatened that CPA "**will proceed with further collection activity which could jeopardize your credit standing**." (Bold emphasis added.)

52.   Plaintiff received the letter and again was upset and frustrated that

COMCAST and CPA had not fixed this erroneous claim as they had assured

and promised her.

53.   Plaintiff was very concerned about this additional threat of credit reporting

on her impeccable credit history.

54.   On February 15, 2011, Plaintiff spoke with a CPA collection agent to again

dispute the debt and again advised CPA of the mistake.

55.   During this conversation Plaintiff had CPA's employee review the computer

notes made by CPA's own collection agent "Pat" during the January 3, 2011

conference call with COMCAST and the Plaintiff.

56.   Plaintiff was unsatisfied with the CPA collection agent's failure to reassure

her that the issue was permanently resolved at that time, and on the same

day,  February 15, 2011, Plaintiff followed up her call to CPA with two

other calls with  COMCAST employees which each lasted nearly one hour

each (53 and 56 minutes respectively).

57.   During both of the nearly hour long calls to COMCAST, the representatives

again acknowledged and reaffirmed COMCAST's mistake and stated that it

would be fixed and that Plaintiff should have no more collection activity on

this matter

58. COMCAST employees gave reassurance that her credit would not be affected.

59. On February 19, 2011 Plaintiff sent a second written dispute letter to CPA, advising them of the dispute history and asking them to get with COMCAST and review the account history notes.

60. In February 2011, the Plaintiff requested her credit report with one or more of the major credit reporting agencies to allay her concern that this COMCAST account may have been erroneously and placed on her credit by either CPA or COMCAST.

61. As of February 2011, the false COMCAST account was not on her credit files.

62. CPA sent Plaintiff a letter dated April 7, 2011 which was headed in larger font "NOTICE OF REPORT TO CREDIT BUREAUS."

63. The body of the letter stated:

   **Dear Mary Brown:**

   **Be advised that we are in the process of requesting written authority to refer your name and address and the amount of $196.58 to major national**

**credit reporting bureaus throughout the United**

**States.**

> **Since this could have a serious impact on your**
>
> **credit nationwide and may prevent you from**
>
> **obtaining credit for as long as seven (7) years, we are**
>
> **offering you one last chance to pay the balance of**
>
> **$196.58 before serious action is taken.**
>
> **Only your full payment forwarded directly to**
>
> **us by 04/02/11 in the enclosed envelope will prevent**
>
> **the probably reporting of your past due account to**
>
> **these credit reporting agencies.**

(Bold Emphasis added.)

64. The letter disturbed plaintiff greatly as her credit is excellent with no

collection accounts.

65. In or about April 2011, CPA did in fact report this false information on

behalf of COMCAST the credit reporting agencies TRANS UNION,

EQUIFAX, and EXPERIAN.

66.   On August 11, 2011 plaintiff ordered an Equifax "3-in-1" report that

      showed the credit information reported by EQUIFAX, and also TRANS

      UNION and EXPERIAN.

67.   The report referenced in the preceding paragraph shows that the false

      information regarding the erroneous COMCAST account had been reported

      by CPA to defendants EQUIFAX, TRANS UNION and EXPERIAN.

68.   Plaintiff immediately filed reinvestigation requests with each of the Credit

      Reporting agencies on or about August 11, 2011.

69.   On or about August 17, 2011, defendant TRANS UNION sent Plaintiff

      notice that it had verified the information and that it was not going to

      change the information reported by CPA in the Plaintiff's credit file with

      their company.

70.   On or about September 6, 2011, defendant EQUIFAX sent Plaintiff notice

      that it had verified the information and that it was not going to change the

      information reported by CPA in the Plaintiff's credit file with their

      company.

71.   On or about September 8, 2011, EXPERIAN sent Plaintiff notice that it had

      verified the information and that it was not going to change the information

      reported by CPA in the Plaintiff's credit file with their company.

72.    During the reinvestigation process with each of the three credit reporting

agencies, CPA failed to report to each of the Credit Reporting Agency's that

the furnished information that it provided to each of them on behalf of

COMCAST was disputed by Plaintiff.

73.    Defendants EQUIFAX, TRANS UNION and EXPERIAN merely parroted

back the reaffirmation that each received from CPA,  and none of the three

did anything to independently investigate the false information that was

being reported.

74.    Plaintiff sent a second written dispute that was identical in substance to

defendants EQUIFAX, EXPERIAN, and TRANS UNION on September 13,

2011.

75.    The September 13, 2011second reinvestigation request to each of the Credit

Reporting agency defendants demanded another and more thorough

investigation and also included documents proving the debt was not hers

which included her apartment lease showing a different address, her driver's

license showing a different address, and a copy of a letter from the

apartment management showing that she did not and had not lived at the

address with the defaulted account was incurred and advised them that it

was actually a male individual with the same last name of "Brown" that

lived there.

76.     EQUIFAX and TRANS UNION each deleted the false trade line in October

after being provided with this additional information, but EXPERIAN

inexplicably did not.

77.     EXPERIAN sent Plaintiff a letter dated September 28, 2011 which stated in

pertinent part:

> **Dear Mary Margaret Brown**
>
> **We are responding to your request to verify item(s)**
>
> **on your personal credit report.  We have already**
>
> **investigated this information and the credit grantor**
>
> **has verified its accuracy.  Please refer to the personal**
>
> **credit report you received for the name, phone**
>
> **number, and address of the credit grantor who**
>
> **verified this information.  Pursuant to section**
>
> **611(a)(3)(A) of the Fair Credit Reporting Act, we will**
>
> **not be investigating your dispute again at this time.**

(Bold emphasis added.)

78.   As of this date, CPA continues to furnish and has not attempted to delete the false information.

79.   As of this date EXPERIAN continues to report and convey derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties.

80.   The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

81.   Plaintiff has been upset and reduced to tears on several occasions as a result of this false reporting.

82.   Additionally, Plaintiff has been chilled from applying for credit while this false information is still being reported by CPA to one or more of the national credit reporting agency defendants.

83.   Plaintiff's credit reports and file containing the inaccurate, derogatory information have been obtained from EQUIFAX, TRANS UNION and EXPERIAN, and have been reviewed on one or more occasions by prospective and existing credit grantors and extenders of credit.

84.   Plaintiff has purchased a report with the false and inaccurate information on it.

85.   As a result of each and every one of the Defendants' conduct, Plaintiff has suffered actual damages which include, but are not limited to wasted personal time, phone and mail charges, credit denial or loss of credit opportunity, credit defamation including harm to credit reputation and credit score as well as emotional distress which includes anxiety, frustration, embarrassment, and humiliation.

86.   At all times pertinent hereto, each Defendant was acting by and through its respective agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of said Defendant.

87.   At all times pertinent hereto, the conduct of the Defendants, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

88.   CPA's course of business conduct in this case violates multiple sections of the FDCPA, the FCRA, Georgia's Fair Business Practices Act (hereinafter GaFBPA), and Georgia Tort law.

89.   COMCAST's course of business conduct in this case violates the GaFBPA and Georgia Tort law.

90.   TRANS UNION, EXPERIAN and EQUIFAX's course of business conduct

with regard to Plaintiff in this case violates the FCRA.

91.   Plaintiff has complied with all conditions precedent to bring this action.


**CAUSES OF ACTION AND CLAIMS**

**COUNT ONE: VIOLATION OF THE FEDERAL**

**FAIR DEBT COLLECTION PRACTICES ACT**

**(CPA ONLY)**

92.   The acts of Defendant CPA constitute violations of the Fair Debt Collection

Practices Act.

93.   Defendant's violations of the FDCPA include, but are not limited to, the

following:

94.        Engaging in conduct the natural consequences of which is to

harass, oppress, or abuse any person in connection with the

collection of a debt, in violation of 15 U.S.C. § 1692d;

95.        The use of any false, deceptive, or misleading representations

or means in connection with the collection of any debt, in

violation of 15 U.S.C. § 1692e;

96.        Falsely representing the character, amount, or legal status of a

           debt, in violation of 15 U.S.C. § 1692e(2)(A);

97.        Communicating to any person credit information which is

           know to be false, including the failure to communicate that a

           disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8);

98.        The use of any false representations of deceptive means to

           collect or attempt to collect any debt, in violation of 15 U.S.C.

           § 1692e(10);

99.        The use of unfair or unconscionable means to collect or attempt

           to collect any debt; in violation of 15 U.S.C. § 1692f; and

100.       Attempting to collect an amount which is not owed, in

           violation of 15 U.S.C. § 1692f(1).

101.   As a result of Defendant CPA's actions, Plaintiff is entitled to an award of

       actual and  statutory damages, as well as an award of costs and attorney

       fees.

**COUNT TWO:  VIOLATION OF THE FEDERAL FAIR**

**CREDIT REPORTING ACT [Consumer Reporting Agency**

**claims]**

## (EQUIFAX, EXPERIAN and TRANS UNION)

102. At all times pertinent hereto, Defendants EQUIFAX, EXPERIAN and TRANS UNION were each considered a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

103. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a©.

104. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

105. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Defendants are liable to the Plaintiff for engaging in the following conduct:

(a)  willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. §1681e(b);

(b)  willfully and negligently failing to properly and timely delete the inaccurate information from the Plaintiff's credit files despite being unable to verify the

accuracy of the information and/or being provided with

proof of its inaccuracy; and

(c)     willfully and negligently continuing to report the

inaccurate information despite having knowledge of its

inaccuracy and/or inability to be verified.

106.   The conduct of each Defendant was a direct and proximate cause, as well as

a substantial factor, in bringing about the serious injuries, actual damages

and harm to the Plaintiff that are outlined more fully above and, as a result,

each Defendant is liable to the Plaintiff for the full amount of statutory,

actual and punitive damages, along with the attorneys' fees and the costs of

litigation, as well as such further relief, as may be permitted by law.

## COUNT THREE: VIOLATIONS OF THE FEDERAL FAIR

## CREDIT REPORTING ACT [Furnisher Claim]

## (CPA only)

107.   At all times pertinent hereto CPA was a "person" as that term defined by 15

U.S.C. § 1681a(b).

108.   CPA violated sections 1681n and 1681o of the FCRA by willfully and

negligently failing to comply with the requirements imposed on furnishers

of information pursuant to 15 U.S.C. §1681s-2(b).

109.   CPA's conduct was a direct and proximate cause, as well as a substantial

factor, in causing the serious injuries, damages and harm to the Plaintiff that

are outlined more fully above, and as a result CPA is liable to compensate

Plaintiff for the full amount of statutory, actual and punitive damages, along

with attorneys' fees and costs, as well as such other relief, permitted by law.

### COUNT FOUR: VIOLATION OF THE GEORGIA FAIR

### BUSINESS PRACTICES ACT, O.C.G.A. §§ 10-1-399 et seq.

### (ALL DEFENDANTS)

110.   The combined act of the Defendants independently, jointly and severally

constitute violations of Georgia's Fair Business Practices Act, including but

not limited to the use of unfair or deceptive acts or practice in the conduct of

consumer transactions and consumer acts or practices in trade or commerce.

111.   The conduct of the Defendants was a direct and proximate cause, as well as

a substantial factor, in bringing about the serious injuries, actual damages

and harm to the  Plaintiff that are outlined more fully above and,  as a

result, Defendant is liable to the Plaintiff for the full amount of actual,

treble and exemplary damages, along with the attorneys' fees and the costs

of litigation, as well as such further relief, as may be permitted by law.

## COUNT FIVE: DEFAMATION

### (CPA and COMCAST only)

112.   COMCAST communicated false information to CPA which falsely accused

Plaintiff of failing to pay a debt.

113.   CPA acted as the agent of COMCAST.

114.   CPA acted at the express direction of COMCAST.

115.   COMCAST had full knowledge of its agent CPA's actions.

116.   CPA has published the false information that it received from COMCAST

to at least three credit reporting agencies.

117.   The statements made by COMCAST and CPA are false in that said

statements inaccurately reflect Plaintiff's credit information and debt

repayment history, and paint Plaintiff as financially irresponsible and

delinquent.

118.   This false information was, in turn, re-published to every single creditor,

prospective creditor or other entity that has requested Plaintiff's credit

30

report since the false information was listed.

119.  Defendant COMCAST and CPA knew that the statements were false when made, and had no factual basis for making the statements, inasmuch as Plaintiff has notified them repeatedly through writing, telephone communication and extensive documentation that the reported information was inaccurate.

120.  Nonetheless, Defendants continued to publish the false and negative statements concerning the Plaintiff's credit history up through the present time.

121.  Defendants have acted with malice.

122.  Further, Defendants have failed to communicate the information provided to them by Plaintiff to all creditors, prospective creditors, furnishers of information and all other entities to whom it provides credit information concerning the Plaintiff.

123.  Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate the Plaintiff for the full amount of actual damages, compensatory damages and punitive damages, as well as

such other relief, permitted under the law.


## COUNT SIX: ABUSIVE COLLECTION AND TORTIOUS

## INFLICTION OF EMOTIONAL DISTRESS

### (CPA and COMCAST only)

124.   The individual and combined acts of the Defendants CPA and COMCAST

described above, constitute abusive collection and tortious infliction of

emotional distress under Georgia state tort law.

125.   As a result of said Defendants' actions, Plaintiff is entitled to relief

including, but not limited to,  1) actual damages, including general damages

for emotional distress,  2) costs,  3) a reasonable attorney's fee, and  4) an

award of punitive damages to penalize and punish defendants and to deter

defendants from repeating such actions again in the future.


## JURY TRIAL DEMAND

126.   Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT

JUDGMENT BE ENTERED AGAINST DEFENDANTS AND IN FAVOR OF

PLAINTIFF, AS FOLLOWS:

a)     That Plaintiff be awarded statutory, actual, treble, punitive and exemplary damages;

b)     That Plaintiff be awarded the expenses of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §§1681n, 1681o, and 1692k, O.C.G.A. §§ 13-6-11 and 10-1-399;

c)     That the Court declare each and every defense raised by Defendants to be insufficient; and

d)     That the Court grant such further and additional relief as is just in the circumstances.

Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by:     /s/ James M. Feagle
        James M. Feagle
        Georgia Bar No. 256916
        jimfeagle@aol.com
        108 East Ponce de Leon Avenue
        Suite 204
        Decatur, GA 30030
        404 / 373-1970
        404 / 601-1855 fax

        Kris Skaar
        Georgia Bar No. 649610
        krisskaar@aol.com
        Justin T. Holcombe
        Georgia Bar No. 552100

jholcombe@skaarandfeagle.com
P.O. Box 1478
331 Washington Ave.
Marietta, GA 30061-1478
770 / 427-5600
404 / 601-1855 fax